UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES OF AMERICA,

    v.

DERBY RODRIGUEZ,

       Defendant.
---------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0313 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 19, 2016, Derby Rodriguez ("Defendant") pleaded guilty to one count of importation of cocaine, in violation of 21 U.S.C. § 952(a). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 14 months of incarceration, and three (3) years of supervised release, and payment of a $100.00 special assessment.

## BACKGROUND

On May 26, 2015, the United States filed a pre-arraignment Complaint against Defendant, alleging he had unlawfully imported cocaine, a Schedule II controlled substance, into the United States. *See* Compl. at 1, ECF No. 1. On June 23, 2015, the United States indicted Defendant on two counts: (1) importation of cocaine, in violation of 21 U.S.C. § 952(a); and (2) possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *See* Indictment at 1-2, ECF No. 9. On May 19, 2016, Defendant pled guilty to Count One of the Indictment pursuant to a Plea Agreement. *See* Plea Agreement ¶ 1, ECF No. 26.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## LEGAL STANDARD

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## DISCUSSION

### I. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on August 13, 1994, in New York, New York. *See* Presentence Investigation Report ("PSR") ¶ 27, ECF No. 27. The younger of two children, he lived with his parents and brother until he was five years old, at which time he was sent to live with his aunt in the Dominican Republic because his parents needed help with childcare. *Id.* ¶¶ 27, 29. During the time Defendant lived with his aunt, his parents maintained regular contact with him and continued to support him financially. *Id.* ¶ 29. When he was ten, Defendant returned to the United States to live with his parents, who were able to provide the family with basic necessities. *Id.* Defendant reports he had a good childhood and has close bonds with his parents and siblings, including two maternal half-brothers. *Id.* ¶¶ 27-29.

In 2008, when he was fourteen, Defendant elected to begin smoking marijuana on a daily basis. *Id.* ¶ 35. Between July 2009 and February 2014, from the ages of approximately fifteen to twenty, he attended DeWitt Clinton High School in the Bronx, New York, but he was discharged after he finished tenth grade because he was "over age 17." *Id.* ¶ 42. Defendant reports that he had learning difficulties and frequently skipped school because he preferred playing video games to going to school. *Id.* From 2010 through 2011, he worked part-time as a grocery bagger at various bodegas in the Bronx. *Id.* ¶ 46.

In 2011, when he was seventeen, Defendant moved back to the Dominican Republic to work as a call center operator at a shipping company. *Id.* ¶¶ 29, 45. While there, he met and began dating the woman he eventually married. *Id.* ¶ 30. In 2013, when he was nineteen, Defendant became homesick, abandoned his wife and returned to the United States. *Id.* ¶ 29. Since then, he has lived with and been financially supported by his parents in the Bronx as he has been unable to find a job. *Id.* ¶¶ 29, 31, 44. In 2014, when he was twenty, Defendant elected to begin using powder cocaine on a daily basis, *id.* ¶ 35, and, in February 2015, he elected to import illegal drugs into the United States of America, swallowing eighty-four pellets of an unknown type of drug and smuggling them into the United States, *id.* ¶ 5. Although to date, the Government has not charged Defendant in connection with the trip or provided further details of it, this Court takes notice of that illegal activity *Id.* ¶ 5. On May 24, 2015, while in the Dominican Republic, Defendant married his girlfriend of several years. *Id.* ¶ 30. The couple has no children. *Id.*

On May 26, 2015, Defendant returned to the United States via John F. Kennedy International Airport ("JFK") in Queens, New York, aboard a flight from Santo Domingo, Dominican Republic. *Id.* ¶ 3. During a routine Customs and Border Patrol ("CBP")

3

examination, CBP agents noticed Defendant was visibly nervous. *Id.* After a baggage examination and pat-down search of Defendant "yielded results," Defendant was transported to a medical facility at JFK, where an x-ray of his intestinal tract was performed. *Id.* While he was detained at the medical facility, Defendant told agents he had swallowed twenty-nine pellets and concealed eighteen additional pellets in his rectum. *Id.* He subsequently passed all forty-seven pellets, which field-tested positive for cocaine. According to a Drug Enforcement Administration laboratory report, the net weight of the cocaine totaled 460.9 grams. *Id.* Defendant was subsequently placed under arrest. *Id.*

In post-arrest statements, Defendant admitted to agents that, before he left New York on the instant trip, he had been given $4,000.00 to transport to the Dominican Republic. *Id.* ¶ 4. When he arrived there, Defendant had delivered the money to an individual, who in turn gave Defendant drug pellets to ingest before his flight back to the United States. *Id.* In exchange, Defendant was promised someone would pick him up from JFK upon his return and pay him $70.00 per pellet he delivered. *Id.* Defendant also said that he owed $1,500.00 to the person who was to pick him up from JFK, which Defendant had borrowed in February 2015, and that this person's girlfriend had purchased Defendant's airline tickets for the instant trip. *Id.* The Government has advised it does not know whether the money Defendant transported to the Dominican Republic was intended for the purchase of cocaine in relation to the instant trip, constituted proceeds from other drug sales, or was for some other purpose. *Id.* In his post-arrest statements, Defendant also disclosed his prior trip to import illegal drugs into the United States of America in February 2015. *Id.* ¶ 5.

On June 1, 2015, Defendant was released on a $75,000.00 secured bond with pretrial reporting requirements. *Id.* ¶ 2. On July 13, 2015, he entered the Special Options Services

("SOS") Program, *id.*, which offers the benefit of supervision and services to non-violent juvenile and young adult defendants as an alternative to pretrial detention. Upon the recommendation of Pretrial Services, Defendant underwent a ten-day educational and vocational assessment, which revealed that he reads at a third grade level, has the math computation skills of a fourth grader, and has the applied math skills of a sixth grader. *Id.* ¶ 41; *see also* Order Modifying Conditions ("Order") at 1, ECF No. 31 (noting similar). In addition, a cognitive testing evaluation indicated Defendant's IQ was 80. Order at 1. Although Defendant was temporarily remanded to custody on December 4, 2015, pursuant to a technical bond revocation, he was re-released after a bond hearing on December 14, 2015 on a $75,000.00 unsecured bond with location monitoring and continued participation in the SOS Program and has been at liberty since. PSR ¶ 2. Defendant's supervising Pretrial Services Officer has advised that Defendant has been compliant with the conditions of his release. *Id.* Specifically, in January 2016, Defendant was referred to an outpatient drug treatment program, which he completed successfully in July 2016. *Id.* ¶ 39. And, between June and August 2016, Defendant "had satisfactory attendance and was engaged with his peers" during his participation in a vocational training program. *Id.* ¶¶ 41, 44.

On August 2, 2017, Pretrial Services submitted a memorandum to this Court describing a recent decrease in Defendant's motivation and increase in his noncompliant behavior and seeking the termination of his participation in the SOS Program. *See* Order at 1, 3. Specifically, the memorandum alleged that, after making substantial progress until approximately May 2017, Defendant lost motivation, abruptly quit his job, and began lying to Pretrial Services in June and July 2017. *See id.* at 1-3. Accordingly, on August 3, 2017, this Court terminated Defendant's

participation in the SOS Program and subjected him to home detention pending sentencing. *See id.* at 4.

## II. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court also takes into account Defendant's minimal participation in the offense, lack of criminal history, cognitive limitations, and progress while out on bond.

## III. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of importation of cocaine, in violation of 21 U.S.C. § 952(a), for which he faces a maximum term of imprisonment of twenty years. *See* 21 U.S.C. § 960(b)(3). If a term of imprisonment is imposed, the Court must also impose a term of supervised release of at least three years, *see id.*, unless Defendant satisfies the mitigating factors in 18 U.S.C. § 3553(f), in which case the statutory minimum does not apply and the authorized term of supervised release is not more than three years, *see* 18 U.S.C. § 3583(b)(2). Because the offense is a Class C felony, Defendant may also be sentenced to a term of probation of not less

than one nor more than five years, *see id.* § 3561(c)(1), with one of the following conditions unless extraordinary circumstances exist: a fine, restitution, or community service, *see id.* § 3563(a)(2). Defendant also faces a maximum fine of $1,000,000.00, *see* 21 U.S.C. § 960(b)(3), and payment of the mandatory special assessment of $100.00, *see* 18 U.S.C. § 3013.

## IV. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2D1.1(a)(5) applies to violations of 21 U.S.C. § 952(a) and, per Guidelines § 2D1.1(c)(9), sets a base offense level of twenty-two. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1 (Nov. 2016) ("USSG" or "Guidelines"). Because Defendant has satisfied all five factors outlined in 18 U.S.C. § 3553(f) and Guidelines § 5C1.2, however, he is eligible for a two-level safety-valve reduction. *Id.* § 2D1.1(b)(17). Defendant was also a minimal participant in the offense, so a four-level reduction is applied. *Id.* § 3B1.2(a). In addition, Defendant's acceptance of responsibility by pleading guilty permits a further three-level reduction. *Id.* § 3E1.1(a), (b). Accordingly, Defendant's total adjusted offense level is thirteen. Because Defendant has no prior arrests or convictions, *see* PSR ¶¶ 20-25, he has a criminal history score of zero and a criminal history category of one, *see* USSG ch. 5, pt. A.

Given a total offense level of thirteen and a criminal history category of one, the Guidelines suggest a term of imprisonment of between twelve and eighteen months. USSG ch. 5, pt. A. Defendant may also be sentenced to: a term of supervised release of one to three years because he meets the criteria set forth in 18 U.S.C. § 3553(f) and Guidelines § 5C1.2, so no

7

statutory minimum applies, *id.* § 5D1.2(a); a fine of between $3,000.00 and $1,000,000.00, *id.* § 5E1.2(c); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines suggest Defendant is ineligible for probation. *Id.* § 5B1.1 cmt. n.2.

The United States Government requests a Guidelines range sentence of between twelve (12) and eighteen months (18) of incarceration to be followed by an appropriate period of supervised release. Government Sentencing Memorandum at 1, ECF No. 33. The U.S. Probation Department recommends a sentence of three years of probation with special conditions, which it views as sufficient in this case "[b]ased upon the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for punishment and deterrence." *See* Sentence Recommendation at 2, ECF No. 27-1. Probation also notes that Defendant qualifies for a split sentence of six months in custody followed by six months of home confinement to satisfy the minimum of the Guidelines range and has satisfied the "safety-valve" provision. *See id.* Similarly, Defendant's counsel suggests that a "time served sentence would be reasonable and just" because Defendant "does not present any sort of threat that warrants incarceration" and "[d]eterrence is not at issue in this case." *See* Def.'s Sentencing Mem. at 4, ECF No. 32. Specifically, Defendant has no history of violence and "has conquered his drug addiction and learned how to hold down a job despite profound cognitive impairments," including an IQ of 80. *See id.* at 1-2. In addition, counsel asserts that Defendant should not be punished for his failure to graduate from the SOS Program because, although he is "a poor fit for intensive supervision," he has nevertheless made progress and now "his only goals are to work at a modest job and spend time with his friends and family." *See id.* at 2, 4.

V.  **Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Guidelines § 5K2.21 contains a policy statement regarding dismissed and uncharged conduct. Specifically, it provides that "[t]he court may depart upward to reflect the actual seriousness of the offense based on conduct . . . that did not enter into the determination of the applicable guidelines range." USSG § 5K2.21(2). Here, as described above, Defendant has admitted to participating in an additional courier trip in February 2015, for which he was never charged and which thus did not enter into the determination of the applicable Guidelines range. The Court's sentence takes such uncharged conduct into account.

VI.  **The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, including this Defendant's admitted previous yet uncharged drug importation activity, the sentence of this Court avoids unwarranted sentence disparities.

VII.  **The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in this case, *see id.* § 3663.

## CONCLUSION

A sentence of 14 months of incarceration to be followed by three (3) years of supervised release, and payment of the $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 15, 2017
      Brooklyn, New York